# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| THE PRESTON PARTNERSHIP, LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>ADG DESIGN STUDIO, LLC, ATLANTA DESIGN GROUP, INC., CHANDRA CHERRY, and MARK DARNELL,<br><br>       Defendants. | 1:17-cv-2846-WSD |

## OPINION AND ORDER

This matter is before the Court on Plaintiff The Preston Partnership, LLC's ("Plaintiff" or "Preston") "Emergency Motion for Temporary Restraining Order and Injunctive Relief" [3] ("Motion for TRO").

## I. BACKGROUND

Preston is an architectural and interior design firm located in Atlanta, Georgia. (Compl. ¶ 9). Preston has a nationwide portfolio of mid- to large-scale multifamily and mixed-use projects. (Id.).

Defendant Chandra Cherry ("Ms. Cherry") is an interior designer. From March 1, 2006, to March 31, 2017, Ms. Cherry worked at Preston as a Principal of Interior Design. (Id. ¶ 10).

In April 2017, Ms. Cherry and three (3) other former Preston employees joined ADG Design Studio, LLC ("ADG Studio"), a newly-created division of Defendant Atlanta Design Group, Inc. ("Atlanta Design Group"). (Id. ¶ 11; Tr. at 32, 35). Ms. Cherry is a Managing Partner of ADG Studio and Atlanta Design Group. (Compl. ¶ 11). Defendant Mark Darnell is the Managing Member of ADG Studio and the President of Atlanta Design Group. (Id. ¶ 5).

In July 2017, ADG Studio launched its website, studio.atldesigngroup.com (the "Website"). (Tr. at 13; see also Compl. ¶ 12).[1] The Website contains photographs of interior design projects that were completed by Ms. Cherry, along with other Preston employees, while Ms. Cherry worked at Preston (the "Photographs"). (Tr. at 8). The Photographs appear on the Website: (1) on the homepage, as sliding images moving across the screen; (2) as a collection of thumbnail images under the main "Portfolio" page; and (3) individually, in larger format, when selected from the "Portfolio" page. In small, white letters on the bottom right corner of the Photographs is a statement which reads: "Work done while Principal at The Preston Partnership." Plaintiff asserts that this statement is false because neither ADG Studio nor Atlanta Design Group was ever a Principal at Preston. Plaintiff asserts further that the small text, coupled with the images

---

[1] The address, adg-studio.com, redirects to studio.atldesgingroup.com. (See Compl. ¶ 12).

sliding across the screen, make the statement "indecipherable." (Compl. ¶ 15; Tr. at 8-10).

Plaintiff also alleges that the design of the Website is misleading because the Website does not contain a section highlighting Ms. Cherry's personal portfolio of work. Rather, the Photographs are represented as showing ADG Studio's portfolio of work, when in fact ADG Studio—a newly created company—does not have a portfolio of work. (Compl. ¶ 16; Tr. at 7-8, 10).

On July 12, 2017, Robert Preston ("Mr. Preston"), President of The Preston Partnership, sent Ms. Cherry an email, asserting that the Photographs on the Website were misleading and asking that they be removed. (Id. ¶ 18).

On July 21, 2017, Preston's counsel sent Ms. Cherry a letter demanding that ADG Studio "cease and desist the unauthorized representation of Preston's work on the ADG Studio website." (Id. ¶ 20). Mr. Darnell and three other ADG Studio employees were copied on the letter. Plaintiff alleges that Defendants failed to respond to Plaintiff's communications.

On July 27, 2017, Plaintiff filed its Complaint [1], asserting claims for violation of the Lanham Act, 15 U.S.C. § 1125(a), for false designation of origin of services; violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372 (Count II); injunctive relief (Count III); and attorneys' fees (Count IV).

On July 28, 2017, Plaintiff filed its Motion for TRO under its Lanham Act claim, seeking to enjoin Defendants (1) from displaying any photographs on the Website depicting Plaintiff's interior design work, and (2) from misrepresenting the origin of the Photographs in a way that is likely to cause confusion as to the origin of the work.

On August 9, 2017, the Court conducted a hearing on Plaintiff's Motion for TRO. At the hearing, Mr. Preston stated that having photographs of Preston projects on ADG Studio's Website "is very deceiving because it gives the impression that ADG has a history very similar to what our history is. It gives the clear impression that those projects were done . . . by ADG when obviously they were not. And I think it gives them a false portfolio of work when really they obviously don't have a portfolio of work because they are a start-up company." (Tr. at 8). Mr. Preston testified that he "think[s] there will inevitably be confusion that those projects [in the Photographs on the Website] were done by ADG and not by Preston." (Tr. at 20). Mr. Preston admitted, however, that he is not aware of any complaints from prospective or existing clients that the projects depicted in the Photographs on the Website were completed by ADG, and not Preston, and he does not expect to know of clients that have engaged ADG because of their portfolio of work. (Tr. at 19-20). Mr. Preston also stated that he has not lost any

4

business as a result of people seeing the Photographs on the Website and being drawn to ADG for design work. Mr. Preston testified:

> No, I can't sit here and say that I have lost business. I'm not aware that I have lost business. But, again, I don't know how I would become aware, you know.
>
> And it may not even be business that I might have gotten, and I'm fine with that. You know, it's more I feel that the [W]ebsite is very deceiving and gives them a sense of credibility, if you wish, that they really don't deserve. It isn't their credibility. I mean, they are a start-up company.

(Tr. at 21-22).

Ms. Cherry also testified at the hearing. She asserted that she intended to credit Preston for the work shown in the Photographs, and after the Complaint was filed, Defendants offered, and still want, to work with Plaintiff to reach an acceptable solution. The parties attempted to resolve their concerns after the hearing, but were unsuccessful.

## II. DISCUSSION

### A. Legal Standard

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief

would serve the public interest." Schiavo ex. rel Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam). "[A] [temporary restraining order or preliminary injunction] is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." SunTrust Bank v. Houghton Mifflin Co., 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam) (citation omitted).

　　B.　Analysis

　　　　1.　Likelihood of Success on the Merits

Plaintiff seeks a TRO on its claim for false designation of origin under Section 43(a)(1)(A) of the Lanham Act. Section 43(a)(1)(A) prohibits using:

> in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> 　　(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

15 U.S.C. § 1125(a).

"To prevail on a false designation of origin claim, *a plaintiff must show it was either actually or likely to be damaged* by the fact that the defendant used a 'false designation of origin, false or misleading description of fact, or false or

6

misleading representation of fact, which [wa]s likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his or her goods, services, or commercial activities by another person.'" Lipscher v. LRP Publ., Inc., 266 F.3d 1305, 1312-13 (11th Cir. 2001) (citing 15 U.S.C. § 1125(a)(1)(A)) (emphasis added). To support a claim under Section 43(a)(1)(A), a plaintiff must show: (1) the goods or services at issue originated with the plaintiff; (2) the defendant falsely designated the origin of the work; (3) the false designation was likely to cause consumer confusion; and (4) the plaintiff was harmed by the defendant's false designation. See PHA Lighting Design, Inc. v. Kosheluk, No. 1:08-cv-1208, 2010 WL 1328754, at *4 (N.D. Ga. Mar. 30, 2010).

> (a) Whether the false designation is likely to cause consumer confusion

Here, assuming that the Lanham Act applies to Plaintiff's claim,[2] Plaintiff fails to allege facts to support that Defendants' allegedly false designation is likely to cause consumer confusion. "While there is no bright line test to determine the existence of a likelihood of consumer confusion, recovery under the Lanham Act requires, at a minimum, that confusion, mistake, or deception be likely, not merely

---

[2] Because the Court finds that Plaintiff fails to show that Defendants' allegedly false designation is likely to cause consumer confusion, and Plaintiff fails to show that it was harmed by Defendants' allegedly false designation, the Court does not decide the impact, if any, of Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), on Plaintiff's claim in this action.

7

possible." Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 651 (11th Cir. 2007). Factors courts in this circuit consider include defendant's intent and actual confusion. Lipscher, 266 F.3d at 1313; Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1348 (11th Cir. 2012) (focusing on defendant's intent and actual confusion, stating, where "defendant has taken the plaintiff's product and has represented it to be his own work," the first five factors of the likelihood of confusion test are irrelevant).[3] See also Frehling Ent., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1335 (11th Cir. 1999) ("Of these, the [strength of the] mark and evidence of actual confusion are the most important."). A plaintiff must do more than simply show that defendant passed off the plaintiff's services as their own. Lipscher, 266 F.3d at 1313-14.

In its Brief, Plaintiff argues only that Defendants' "refus[al] to remove the photographs of Preston's design work from ADG Studio's website despite an email and a cease-and-desist letter provides strong evidence of their intent to mislead consumers." (Pl's Br. at 6). That Defendants offered to "make [sic] reasonable remedial measures to ensure that [Plaintiff] is properly credited for work depicted

---

[3] Courts in this circuit look to the following factors to determine whether a likelihood of confusion exists in Lanham Act trademark claims: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (3) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. Lipscher, 266 F.3d at 1313 (recognizing all of the factors may not be relevant to a reverse passing off claim).

8

in the [P]hotographs" (see [10.1] at 44-45), and their efforts to negotiate a resolution with Plaintiff before and after the hearing, undercut Plaintiff's assertion that Defendants, even after having notice of Plaintiff's claim, intentionally continued to use the Photographs on the Website to confuse consumers. See Suntree, 693 F.3d at 1348 ("defendant's immediate destruction of the brochure and its elimination of the maintenance presentation from its website support its assertion that [defendant] did not intend to confuse potential customers with photos of [plaintiff's] product"); Can-Am Eng'g Co. v. Henderson Glass, Inc., 814 F.2d 253, 257 (6th Cir. 1987) ("Plaintiff confuses the intentional use of the photo with the kind of intent to misrepresent which is the cornerstone of a money damage action. We note in this regard the swift and effective remedial action [defendant] undertook immediately upon being notified of its error. Under such circumstances we find no false representation which is actionable under the Lanham Act.") (quoted with approval in Suntree, 693 F.3d at 1348); Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha, 290 F. Supp. 2d 1083, 1096 (C.D. Cal. 2003) ("[T]he failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is 'not necessarily indicative of bad faith.'") (quoting SecuraComm Cons., Inc. v. Securacom Inc., 166 F.3d 182, 189 (3d Cir. 1999)).

Plaintiff does not offer any evidence of actual or likely consumer confusion. At the hearing, Mr. Preston testified that he "think[s] there will inevitably be confusion that those projects [in the Photographs on the Website] were done by ADG and not by Preston." (Tr. at 20). Mr. Preston admitted, however, that he is not aware of any complaints from prospective or existing clients that the projects depicted in the Photographs on the Website were completed by ADG, and not Preston. (Tr. at 19-20). Plaintiff fails to show that Defendants' allegedly false designation is likely to cause consumer confusion. See Hi-Tech Pharm, 311 F. Supp. 2d at 1357 (plaintiff did not establish likelihood of consumer confusion, including because, "importantly, [plaintiff] has not clearly demonstrated the nature and extent of confusion in the marketplace. [Plaintiff] has not undertaken any consumer surveys and the record contains no sworn consumer testimony"); cf. All Metals, Inc. v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000) ("The most persuasive evidence in assessing the likelihood of confusion is proof of actual confusion."). Plaintiff fails to show that Defendants' allegedly false designation is likely to cause consumer confusion.

(b) Whether Plaintiff was harmed by Defendants' false designation

Plaintiff further fails to allege facts to support that it was harmed by Defendants' allegedly false designation. In its Brief, Plaintiff conclusorily asserts

that "Defendants' false designation of origin of Preston's work on ADG Studio's website has caused, and is likely to further cause, competitive or commercial injury to Preston" because "[p]hotographs posted to an online portfolio on a business's website are likely to have a material effect on the purchasing decisions of consumers." (Pl's Br. at 6). Plaintiff does not offer evidence that it has lost any customers or goodwill. Rather, Mr. Preston, at the hearing, stated that he has not lost business as a result of people seeing the Photographs on the Website and being enticed to contact Defendants. Mr. Preston testified further that "it may not even be business that [Preston] might have gotten" but "it's more that [he] feel[s] that the [W]ebsite is very deceiving and gives [Defendants] a sense of credibility . . . that they really don't deserve." (Tr. at 21-22). Plaintiff fails to show that it was harmed by Defendants' allegedly false designation. See PHA Lighting, 2010 WL 1328754, at *5 (plaintiff failed to show that it was harmed by claimed false designation where plaintiff did not show that businesses hired defendant based brochure containing alleged false designation, or that plaintiff was in the running for the jobs obtained by defendant, that plaintiff's sales declined since defendant started distributing brochure, or that defendant's actions tarnished plaintiff's goodwill or reputation); cf. Curves Int'l, Inc. v. Mosbarger, 525 F. Supp. 2d 1310, 1314-15 (M.D. Ala. 2007) (where plaintiff failed to offer supporting evidence,

plaintiff's "allegation of los[t] goodwill" did not establish a likelihood of non-speculative, irreparable injury).

Plaintiff fails to allege facts to support that Defendants' allegedly false designation is likely to cause consumer confusion, and Plaintiff further fails to show that it was harmed by Defendants' allegedly false designation.[4] The Court concludes that Plaintiff is not likely to succeed on the merits of its Lanham Act claim, and Plaintiff's Motion for TRO is denied. See Lipscher, 266 F.3d at 1312-13; PHA Lighting, 2010 WL 1328754 at *4. Having found that Plaintiff is not likely to succeed on the merits of its claim, the Court is not required to address the other factors for granting a TRO. See Schiavo, 403 F.3d at 1225-26; Houghton Mifflin, 252 F.3d at 1166.[5]

---

[4] Plaintiff's principal complaint appears, at its core, to object to ADG Studio's representing itself as more than it is—that its website should characterize the company as a startup with no portfolio of work. The Lanham Act does not reach that far. Cf. Sussman-Automatic Corp. v. Spa World Corp., 15 F. Supp. 3d 258, 270-271 (E.D.N.Y. 2014) (The Lanham Act expressly forbids false or misleading descriptions or representations of fact; it does not prohibit "puffery," "an exaggeration or overstatement expressed in broad, vague, and commendatory language").

[5] The Court notes that Plaintiff has an adequate remedy at law because Plaintiff may recover losses and damage it claims it will suffer as a result of Defendants' allegedly false designation of origin, by an award of damages in this action. See, e.g., Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); Mosbarger, 525 F. Supp. 2d at 1314-15 (while loss of customers and goodwill is an irreparable

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that The Preston Partnership, LLC's "Emergency Motion for Temporary Restraining Order and Injunctive Relief" [3] is **DENIED**.

**SO ORDERED** this 17th day of August, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

injury, the injury must be neither remote nor speculative, but actual and imminent). Plaintiff's Motion for TRO is denied for this additional reason. See Schiavo, 403 F.3d at 1225-26; Houghton Mifflin, 252 F.3d at 1166.